UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARA MAE BOWERS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-2056 (ESH) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Clara Mae Bowers, a black female of African descent, has sued her former employer, the District of Columbia, and is proceeding *pro se*. Plaintiff claims that she was discriminated against on the basis of her "race, color, and gender" while employed as a teacher at the Walker Jones Educational Center ("WJEC") within the District of Columbia Public Schools ("DCPS") in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.* Plaintiff also claims that defendant breached her employment contract by failing to follow a number of prescribed procedures during plaintiff's performance evaluations. Before the Court is defendant's Motion to Dismiss. (Defendant's Motion to Dismiss ["Def.'s Mot."]). For the reasons set forth below, defendant's motion will be granted and plaintiff's case will be dismissed with prejudice.

## BACKGROUND

### I. FACTUAL HISTORY

Plaintiff was employed as a middle school teacher with DCPS from around September 2000 to late 2007. (Complaint ["Compl."] ¶ 3.) During the time she alleges discrimination and breach of contract (*i.e.*, September 2006 to December 2007), plaintiff taught at WJEC. (*Id.*)

Plaintiff alleges that defendant engaged in discriminatory acts by giving her negative evaluations in violation of prescribed evaluation procedures. (*Id.* ¶¶ 6-7.) Plaintiff alleges that she was given a disproportionate number of special education students without support from a special education teacher, a support service that she claims was accorded to white teachers and male teachers. (*Id.* ¶ 7.) This, in turn, caused her teaching to suffer because she was unable to manage the students by herself. (*Id.* ¶ 8.) Plaintiff asserts that during evaluations of her performance, defendant failed to fulfill several obligations set forth in the employment contract, including written notice when an evaluation occurred, preconference meetings, and a review of lesson plans and ancillary materials. (*Id.* ¶¶ 19-20.) The combination of the overloaded class and the unfair evaluation techniques created several poor reviews of plaintiff's performance. (*Id.* ¶¶ 19-21.)

Plaintiff claims defendant targeted her because of her race, color, and gender, and as a result, unfairly placed her on a ninety-day evaluation program on November 13, 2006, which in turn resulted in her termination in late 2007. (*Id.* ¶¶ 10-11, 25.) On either November 30, 2007 or December 7, 2007, defendant fired plaintiff as a result of poor evaluations. (*Id.* ¶¶ 12-13, 25; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Reply") ["Def.'s Rep."] at 4 & n.4; Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss ("Supplemental Opposition") ["Pl.'s Supp. Opp."] at 6-7.)

## II. PROCEDURAL HISTORY

Plaintiff filed her Complaint in D.C. Superior Court on September 28, 2010. (*See* Compl. at 1.) The Complaint contains three counts. First, plaintiff claims that defendant violated Title VII of the Civil Rights Act of 1964 by unfairly targeting her because of her race, color, and gender. (*Id.* ¶ 5-14.) Second, plaintiff claims that these same actions violated the DCHRA. (*Id.*

¶¶ 15-16.) Third, plaintiff claims that defendant's failure to follow the evaluation procedures outlined in her employment contract constituted a breach of contract. (*Id.* ¶¶ 17-25.)

Defendant removed the case to the federal court (*see* Notice of Removal [Dkt. #1]), but then filed a Motion to Dismiss claiming that plaintiff had failed to exhaust her administrative remedies, to meet the statute of limitations, and to comply with D.C.'s administrative regime for resolving contract disputes. (Def.'s Mot. at 1). Plaintiff filed an Opposition, supplemented by several evaluation documents generated during plaintiff's employment with defendant. (*See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") ["Pl.'s Opp."].) In response, defendant filed a Reply, attached to which was some of plaintiff's EEO paperwork. (*See* Def.'s Rep.) Plaintiff subsequently filed a Supplemental Opposition to the motion, supplemented by additional paperwork from the evaluation process. (*See* Pl.'s Supp. Opp.) Plaintiff also filed a Supplemental Response to defendant's Motion. (*See* Supplemental Response to Defendant's Motion for Summary Judgment ["Pl.'s Supp. Resp."])

## ANALYSIS

### I. LEGAL STANDARDS

Despite some confusion in this jurisdiction regarding "whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim," recent cases "favor treating failure to exhaust as a failure to state a claim." *Hansen v. Billington*, 644 F. Supp. 2d 97, 102 (D.D.C. 2009) (listing cases); *see also Kilby-Robb v. Spellings*, 309 F. App'x 422, 423 n.1 (D.C. Cir. 2009) ("[T]he mandatory exhaustion requirement is not jurisdictional.").

As the Supreme Court recently held in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "[t]o survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The allegations in plaintiff's complaint are presumed true at this stage, and all reasonable factual inferences must be construed in the plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, 52 F.3d 373, 375 (D.C. Cir. 1995). "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'" *Hughes v. Abell*, 634 F. Supp. 2d 110, 113 (D.D.C. 2009) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Hansen*, 644 F. Supp. 2d at 102 (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

Since the Court will be relying on matters outside the pleadings, the current 12(b)(6) motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). If a party is proceeding *pro se*, the Court has an obligation to inform that party of the "fair notice of the requirements of the summary judgment rule," including "an explanation that the failure to respond to an adverse party's summary judgment motion may result in the district court granting the motion and dismissing the case." *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988)

(citing *Ham v. Smith*, 653 F.2d 628, 630 (D.C. Cir. 1981)); *see also Malik v. District of Columbia*, 574 F.3d 781, 786-87 (D.C. Cir. 2009) (citing *Fox*, 837 F.2d at 509).[1]

Under Rule 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A dispute about a material fact is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Haynes v. Williams*, 392 F.3d 478, 481 (D.C. Cir. 2004) (quoting *Anderson*, 477 U.S. at 248). A moving party is thus entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at

---

[1] The Court issued two *Fox* Orders in this case. The first Order was issued on January 12, 2011, notifying plaintiff that defendant had filed a Motion to Dismiss. (Order, January 12, 2011 [Dkt. #6].) The Order set a deadline of February 11, 2011, for a response from plaintiff. (*Id.* at 1.) Further, as plaintiff is proceeding *pro se*, the Order explained what would occur should plaintiff fail to respond. (*Id.* at 1 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988)).) Plaintiff filed an Opposition on February 10, 2011 (Pl.'s Opp. [Dkt. #7]) and a Supplemental Opposition on March 21, 2011. (Pl.'s Supp. Opp. [Dkt. #13].)

The second Order was issued on April 13, 2011, notifying plaintiff that defendant's Motion to Dismiss would be treated as a motion for summary judgment. (Order, April 13, 2011 [Dkt. #14].) The Order set a deadline of May 9, 2011, for a response from plaintiff and informed her that she should file any material pertinent to the motion. (*Id.* at 1-2.) Further, as plaintiff is proceeding *pro se*, the Order explained in detail what would occur should plaintiff fail to respond. (*Id.* at 2-4 (citing *Fox*, 837 F.2d at 509).) Plaintiff filed a supplemental pleading, including eleven exhibits, on April 26, 2011. (Pl.'s Supp. Resp. [Dkt. #15].)

255; *see also Wash. Post. Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. If the non-movant fails to point to "affirmative evidence" showing a genuine issue for trial, *Anderson*, 477 U.S. at 257, or "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998), *aff'd* No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 1999) (internal citation omitted).

## II.     TITLE VII EXHAUSTION

### A.     Legal Framework

"[A] timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court." *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976)). If the matter is not resolved informally, the complainant may file a formal complaint against the agency, which the agency must investigate within 180 days of filing. 29 C.F.R. §§ 1614.105(d), 106(e)(2), 108(e). A complainant must file her formal charge within 180 days (or 300 days if a complaint is first filed with the state or local agency) after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act," and "[t]he charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

6

Once the agency investigation concludes, the employee has the right to (1) request a hearing and decision from an administrative judge, or (2) request an immediate final decision from the agency. 29 C.F.R. § 1614.108(f). The employee may appeal a decision of the administrative judge or the agency to the EEOC or file a civil action in federal district court within 90 days of the receipt of a notice of final action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401, 1614.407.

### B. Plaintiff's Complaint Was Untimely

Defendant argues that plaintiff's EEO charge was filed beyond the 180-day deadline for filing a charge, and thus she has failed to exhaust her administrative remedy for that claim. The Court agrees. Plaintiff alleges that she was discriminated against from September 2006 through November 2007, culminating in her termination. (Compl. ¶¶ 6-14.) Plaintiff's date of termination occurred either on November 30, 2007 or December 7, 2007.[2] (Def.'s Rep. at Ex. 3.) Plaintiff's EEO charge is dated July 14, 2008. (Def.'s Rep. at Ex. 1.) Because the EEO charge was filed either 220 or 227 days after the last possible date on which plaintiff could have been discriminated against, plaintiff has failed to exhaust her administrative remedies.

Plaintiff alleges that she filed a simultaneous charge with the D.C. Office of Human Rights on July 14, 2008. (Pl.'s Supp. Opp. ¶ 5; Pl.'s Supp. Resp. at 1, 4). This does not,

---

[2] As defendant notes in its Reply, plaintiff asserts in several places that she was terminated in December 2007 (or specifically on December 7, 2007), as opposed to November 30, 2007. (Def.'s Rep. at 4 & n.4; Pl.'s Supp. Opp. at 6-7.) Plaintiff received a Notice of Termination letter, dated November 16, 2007, from the DCPS Department of Human Resources that stated that plaintiff's termination date would be November 30, 2007. (Def.'s Rep. at Ex. 3.) Plaintiff contends, however, that she asked for and received an extension past that date. (Pl.'s Supp. Opp. at 6-7). However, the use of either the November 30 or the December 7 date produces the same result as both are outside of the 180-day window for filing an EEO complaint. Thus, even viewing this evidence in the light most favorable to the plaintiff (*i.e.*, preferencing plaintiff's unsubstantiated assertion over the actual letter generated by DCPS and sent to plaintiff), the result is the same.

however, trigger the 300-day deadline. As the Supreme Court noted in *Morgan*: "In a State that has an entity with the authority to grant or seek relief . . . , an employee who *initially* files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice . . . ." *Morgan*, 536 U.S. at 109 (emphasis added); *see also* 42 U.S.C. § 2000e-5(e)(1). Although plaintiff's EEO charge lists the local agency, the D.C. Office of Human Rights ("OHR") as the "State or local Agency," nothing indicates that plaintiff *initially* filed her claim with OHR, a prerequisite to qualifying for the 300-day window instead of the 180-day window. *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except [when] . . . the person aggrieved has *initially* instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . .") (emphasis added). Thus, plaintiff's charge should have been filed within 180 days of the alleged discriminatory act. Because it was not, plaintiff's claim must be dismissed for failure to exhaust her administrative remedies.

### III. DISTRICT OF COLUMBIA NOTIFICATION REQUIREMENTS

D.C. Code section 12-309 requires that a party notify the District within six months of an injury if that party intends to bring a claim against the District:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309. The content of the notice can be construed liberally for the claimant, and the notice need not spell out in every detail the incident surrounding the alleged injury. *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995). The six-month deadline, however, is to be construed narrowly against the claimant: "under section 12-309, the six-month clock begins

8

to run from the moment the plaintiff sustains the injury, not from the moment a cause of action accrues," and "strict observance of the statute's six-month time limit is essential." *Distrtict of Columbia v. Dunmore*, 662 A.2d 1356, 1359-60 (D.C. 1995); *see also Wharton*, 666 A.2d at 1230.

Section 12-309 "imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is 'mandatory as a prerequisite to filing suit against the District.'" *Dunmore*, 662 A.2d at 1359 (quoting *Hardy v. District of Columbia*, 616 A.2d 338, 340 (D.C. 1992)). "The rationale underlying the Section 309 notice requirement is to (1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978); *see also Dunmore*, 662 A.2d at 1359 (quoting the same language from *Pitts*). Finally, section 12-309 was "designed to avoid . . . the pitfalls of the statute of limitations" and is not subject to doctrines like tolling. *Dunmore*, 662 A.2d at 1360 (quoting *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)); *see also Brown v. District of Columbia*, 853 A.2d 733, 737-38 (D.C. 2004).

Defendant first argues that Count II is barred because plaintiff failed to give timely notice under section 12-309. (Def.'s Rep. at 4.) The Court agrees. Plaintiff was terminated on November 30, 2007, or alternatively on December 7, 2007, with the alleged workplace discrimination occurring before the termination date.[3] (Compl. ¶¶ 6-13; Def.'s Rep. at Ex. 3; Pl's Supp. Opp. at 6-7.) Plaintiff's § 12-309 letter was filed with the District on June 12, 2008.

---

[3] Here again, the Court need not draw strict lines as to the correct termination date (the substantiated November 30 date or the unsubstantiated December 7 date). Even if the latter date is used, plaintiff still failed to notify the District in a timely manner.

9

(Def.'s Rep. at Ex. 2; Pl.'s Opp. at 7.) The six-month deadline after plaintiff's November date of termination would have been April 30, 2008, twelve days before plaintiff filed her § 12-309 letter. In the alternative, the six-month deadline after plaintiff's December date of termination would have been June 7, 2008, five days before plaintiff filed her § 12-309 letter. Although both instances show that plaintiff filed her letter only a few days after the allowed deadline, D.C. law is clear: the six-month timeframe is to be read strictly and narrowly against the claimant. *See Dunmore*, 662 A.2d at 1359-60. Thus, plaintiff failed to give defendant timely notice under section 12-309.

Plaintiff argues that a letter that she sent to the D.C. Mayor on May 21, 2007, exhausts her administrative remedies. (Pl.'s Supp. Resp. at 1, Ex. 2.) The letter, however, predates plaintiff's alleged termination date and does not put the District on notice of a lawsuit as it only informs the Mayor that plaintiff would like to meet with him, not that she would like the matter investigated or that she is planning on filing a lawsuit. (*Id.* at Ex. 2.)

Defendant next argues that section 12-309's notice requirement should defeat plaintiff's breach of contract claim. (Def.'s Rep. at 4.) Unfortunately, defendant seems to confuse contract claims and tort claims. As the D.C. Court of Appeals has noted:

> . . . [W]e have never actually applied § 12-309 to a claim for breach of contract. . . . Arguably, . . . § 12-309 could apply to a contract claim against the District in which the District was not aware of either the breach or of the injury produced by the breach—if such a category of cases actually exists. At odds with this somewhat attenuated interpretation, however, is the plain language of the statute, which applies to actions for unliquidated "damages to person or property."
>
> The phrase "damages to person or property" is distinctly inapplicable to claims based on a breach of contract. Black's Law Dictionary defines the word "damages" as follows:
>
> > "A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has

> suffered loss, detriment, or injury, whether to his [or her] person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another."
>
> Thus, according to the plain meaning of the language of § 12-309, it applies only to actions sounding in tort. . . . [O]ur reading of the language is consistent with the District's greater need to receive notice in order to ascertain the facts in the tort context, where the District will often be unaware of any injury caused by a breach of its duty, than in the contractual context, where—almost by definition—the District is on notice that any breach will result in an injury.

*District of Columbia v. Campbell*, 580 A.2d 1295, 1301-02 (D.C. 1990) (citing Black's Law Dictionary 351-52 (5th ed. 1979)) (citation omitted). As Count III is labeled "Contract Breach," and the claim raises a breach of contract cause of action, defendant's attempt to apply § 12-309 to a contract claim must be rejected.

## IV.  PLAINTIFF'S CONTRACT CLAIM

Finally, plaintiff contends that defendant breached her employment contract by failing to properly observe and evaluate plaintiff's job performance as a teacher. (Compl. ¶¶ 19-24.) Plaintiff contends that defendant's failure to follow its contractual protocol led to her termination. (*Id.* ¶ 25.) Defendant counters that plaintiff failed to exhaust her administrative remedies as required by the Comprehensive Merit Personnel Act ("CMPA") which provides District employees with an administrative process to dispute "personnel ratings, employee grievances, and adverse actions." *Johnson v. District of Columbia*, 552 F.3d 806, 810 (D.C. 2008).

Although mindful that documents filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *Brown v. District of*

11

*Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), plaintiff's complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction.

"The CMPA was enacted to provide employees of the District of Columbia an impartial and comprehensive administrative scheme for resolving employee grievances." *Holman v. Williams*, 436 F. Supp. 2d 68, 74 (D.D.C. 2006). Further, "[t]he District of Columbia Court of Appeals consistently has held that, with only one exception,[4] the CMPA is the exclusive avenue for aggrieved employees of the District of Columbia to pursue work-related complaints." *Id.* (citing *Baker v. District of Columbia*, 785 A.2d 696, 697-98 (D.C. 2001); *Robinson v. District of Columbia*, 748 A.2d 409, 411-12 (D.C. 2000); *Stockard v. Moss*, 706 A.2d 561, 567 (D.C. 1997)) (footnote added).

The CMPA requires employees of DCPS to appeal an adverse action to the Office of Employee Appeals ("OEA"), whose final decision is appealable to the Superior Court. *Thompson v. District of Columbia*, 978 A.2d 1240, 1242-43 (D.C. 2009) (citing *Wash. Teachers' Union, Local #6 v. D.C. Pub. Sch.*, 960 A.2d 1123, 1134 (D.C. 2008); *Nelson v. District of Columbia*, 772 A.2d 1154, 1156 (D.C. 2001)); *see also* D.C. Code §§ 1-606.03, 1-616.52. Further, judicial review by the Superior Court is limited to review of a *final* OEA decision; until then, the case remains within the jurisdiction of the OEA. D.C. Code §§ 1-606.03(c)-(d).

In this case, plaintiff's claim that defendant breached her employment contract by unfairly evaluating and terminating her falls squarely within the bounds of the CMPA. *See Johnson*, 552 F.3d at 810-11; *McManus*, 530 F. Supp. 2d at 77-79; *Holman*, 436 F. Supp. 2d at 74. Claims that fall within the ambit of the CMPA substantially restrict this Court's ability to hear those claims. "Preemption by the CMPA divests the trial court—whether it be the Superior

---

[4] The exception is for sexual harassment claims, which may be filed in Superior Court. *See Holman*, 436 F. Supp. 2d at 74 (citing *Robinson*, 748 A.2d at 411-12).

Court or this Court—of subject matter jurisdiction." *Holman*, 436 F. Supp. 2d at 74. Further, courts in this district have consistently dismissed claims brought by D.C. employees for lack of subject matter jurisdiction when the CMPA places those claims under the jurisdiction of the OEA. *E.g., Osekre v. Gage*, 698 F. Supp. 2d 209, 210-12 (D.D.C. 2010) (unfair labor practices); *McManus*, 530 F. Supp. 2d at 77-79 (unfair labor practices, denial of workers' compensation, and improper termination); *Hobby v. D.C. Gov't*, No. 10-1954, 2010 WL 4723419, at *1 (D.D.C. Nov. 16, 2010) (denial of pension).

Although it is unclear whether plaintiff has fully pursued the CMPA process, at the very least she has failed to prove that she ever received a final decision from the OEA. Moreover, any final OEA decision would be appealable only to the Superior Court, not to this Court. The Court therefore dismisses plaintiff's breach of contract claim for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted as to Counts I and II. Count III is dismissed without prejudice for lack of subject matter jurisdiction. A separate order will accompany this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: June 2, 2011